IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOSEPH SHAW, | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. G-04-545 |
| INTERNATIONAL BOAT RENTALS, INC., et al., | § § § § | |
| Defendants. | § § § | |

**ORDER DENYING CROSS-PLAINTIFFS INTERNATIONAL BOAT RENTALS, INC.'S AND PROSPECT MARINE, L.L.C.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT OPERATORS & CONSULTING SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This Jones Act case arises out of injuries allegedly sustained by Plaintiff, a Jones Act seaman, aboard the M/V PROSPECTOR ("PROSPECTOR"), an offshore supply vessel. Defendants and Cross-Plaintiffs, International Boat Rentals, Inc. ("IBR") and Prospect Marine, L.L.C. ("Prospect Marine") (collectively "Cross-Plaintiffs"), seek indemnification to the extent they may be held liable from Defendant Operators & Consulting Services, Inc. ("Defendant" or "OCS") pursuant to a Master Service Contract ("MSC") executed between Defendant and Forest Oil Corporation ("Forest Oil"). Now before the Court comes Cross-Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment . For the reasons stated below, the Motions are respectfully **DENIED**.

**I.      Background**

On September 10, 2004, Joseph Shaw ("Plaintiff") filed an Original Complaint against IBR,

Prospect Marine, Forest Oil, Talen's Marine & Fuel, Wood Group Production Services, Inc., Coastal Production, L.L.C., and Union Oil Company of California, for recovery for personal injuries allegedly sustained on February 28, 2004, in the course and scope of his employment as an Engineer/Rigger for Prospect Marine. Defendant Wood Group Production Services, Inc.'s Answer to Plaintiff's Second Amended Complaint identified OCS as the appropriate subsidiary through which it would face any exposure for Plaintiff's injuries. Plaintiff claims that he was injured aboard the PROSPECTOR, a supply boat owned and operated by Prospect Marine. At the time of the alleged injury, the PROSPECTOR was working in navigable waters offshore Texas in High Island Block 552 for and on behalf of Forest Oil, adjacent to one of Forest Oil's fixed platforms. Plaintiff claims that his injuries were caused by the negligence of all Defendants and/or the unseaworthiness of the PROSPECTOR. Plaintiff's Second Amended Complaint invokes the Jones Act and admiralty and general maritime law. All Defendants deny that they were negligent in any respect.

Cross-Plaintiffs now seek contractual indemnity and coverage as an additional assured from Defendant OCS pursuant to the MSC executed between OCS and Forest Oil. The Parties dispute the validity of the indemnity and insurance provisions.

**II.    Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.

Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The Court finds that the rights and obligations of Cross-Plaintiffs and Defendant OCS under the MSC are ripe for consideration. "Interpreting contractual language and determining the legal validity of contractual provisions are purely questions of law." *Diamond Offshore Co. v. A & B Builders, Inc.*, 75 F. Supp. 2d 676, 678 (S.D. Tex. 1999) (citing *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1080 (5th Cir. 1984)).

### III. The Indemnity Provision Under the MSC Between OCS and Forest Oil

Cross-Plaintiffs allege that they are entitled to contractual indemnification from OCS for all damages that they may become liable to pay to Plaintiff pursuant to the MSC executed between OCS and Forest Oil. Cross-Plaintiffs claim that this agreement is valid and enforceable under general maritime law. At the time of the accident, IBR was contracted to Forest Oil under a Blanket Time Charter whereby IBR agreed to furnish its vessels, including the PROSPECTOR, to Forest Oil. At this same time, OCS was contracted to Forest Oil pursuant to the MSC whereby OCS provided various offshore oilfield services to Forest Oil. The MSC is a blanket agreement whereby OCS agreed to perform services for Forest Oil from time to time as requested by Forest Oil. It provided the terms and conditions under which such work was to be performed.

Under Paragraph 4.1 of the MSC, OCS agreed to indemnify Forest Oil and any members of the "Forest Group," defined as Forest Oil, "its subsidiary, affiliated and related companies, and its and their working interest owners, co-lessees, co-owners, contractors and subcontractors, and any

-3-

others for whom any of the foregoing many be acting, and the agents, directors, officers, employees of any one or more of the above names or described parties." Cross-Plaintiffs allege that they are members of the Forest Group because at the time of Plaintiff's injury, IBR was a contractor of Forest Oil, and Prospect Marine was acting on behalf of IBR, and as such, are entitled to indemnity from OCS.

Paragraph 12.1 of the MSC contains a choice-of-law clause that provides in relevant part: "This Contract shall be governed by the general maritime law of the United States. If maritime law is held inapplicable, this Contract shall be governed by the laws of the State of Colorado." The Parties disagree over whether the MSC is a maritime contract, and if not, what laws apply as a result of the MSC's choice-of-law provision. Cross-Plaintiffs argue that the MSC is a maritime contract and therefore, the indemnity provisions contained therein are enforceable under general maritime law. *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992) ("Express contractual indemnity agreements generally are enforceable under maritime law."); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538–39 (5th Cir. 1986) (holding that because maritime law, not state law, applied to contract between vessel owner and operator of oil lease, indemnity provision was valid); *Diamond Offshore Co.*, 75 F. Supp. 2d at 678 (recognizing that if a contract is governed by maritime law, a reciprocal indemnity provision in an agreement between the owner of an offshore oil rig and a service contractor is valid). OCS responds that the MSC is a non-maritime contract, that Louisiana law applies under the appropriate choice-of-law analysis, and that under Louisiana law the indemnity provision is void under the Louisiana Oilfield Indemnity Act. *See* LA. REV. STAT. ANN. § 9:2780 (YEAR).

The natural starting point for this analysis is whether the MSC is a maritime contract. *See Wagner v. McDermott*, 79 F.3d 20, 22 n.4 (5th Cir. 1996) ("Because maritime law enforces indemnity provisions, addressing the applicability of maritime law to a contract as a threshold

inquiry is logical, efficient, and certainly not error."); *Theriot*, 783 F.2d at 538 (construction of a maritime contract is governed by maritime law). Oftentimes, this is not an easy determination. *See Tullos v. Cal Dive International, Inc.*, 188 F. Supp. 2d 709, 713 (S.D. Tex. 2002). "The maritime or non-maritime status of [a] contract ultimately depends on its 'nature and character,' *not* on its place of execution or performance." *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 381 (5th Cir. 2005) (quoting *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1992)) (emphasis in original). To determine whether the "nature and character" of the contract is maritime, the Fifth Circuit employs a two-part test. *See Davis & Sons, Inc.*, 919 F.2d at 316. First, the Court must initially consider the contract's "historical treatment in the jurisprudence." *Id.* Second, the Court examines the specific facts of the case. *Id.* The second part of the *Davis* test requires the Court to consider the following six factors: (1) what does the specific work order in effect at the time of the injury provide?; (2) what work did the crew assigned under the work order actually do?; (3) was the crew assigned to work aboard a vessel in navigable waters?; (4) to what extent did the work being done relate to the mission of that vessel?; (5) what was the principal work of the injured worker?; and (6) what work was the injured worker doing at the time of the injury? *Id.* If the contract in question is a preliminary agreement to be supplemented by later work orders requiring the performance of specific services, the preliminary agreement and the specific work order at issue must be construed together to determine if maritime law is applicable. *Id.* at 315.

In the instant case, the work orders are not available. The Court has been presented with the following evidence that bears on the nature of the MSC: (1) OCS is an oilfield services company and was providing oilfield services at the time of the accident; (2) the contract required OCS to indemnify the Forest Group for unseaworthiness claims related to its performance under the contract; (3) OCS was conducting services for Forest Oil on a fixed platform in the Gulf of Mexico at the time of the accident; (4) the PROSPECTOR was a supply boat sent out to deliver supplies to High Island

552; and (5) OCS employees were operating a crane at the time of the accident to offload a grocery box and other supplies from the PROSPECTOR to Forest Oil's platform.

*A.  Historical Treatment in Jurisprudence*

A review of the relevant jurisprudence indicates that the "authorities distinguishing maritime and non-maritime contracts...turn[] on a minute parsing of the facts." *Hoda*, 419 F.3d at 380. According to the Fifth Circuit, a maritime contract is "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment[.]" *J.A.R., Inc. v. M/V LADY LUCILLE*, 963 F.2d 96, 98 (5th Cir. 1992) (quoting *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 954 (5th Cir. 1988)) (internal quotations omitted). Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime employment, *see Theriot*, 783 F.2d at 538–39, and "[e]ven a contract for offshore drilling services that does not mention any vessel is maritime if its execution requires the use of vessels." *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 500–01 (5th Cir. 2002); *Lewis v. Glendel Drilling Co.*, 898 F.2d 1083, 1086 (5th Cir. 1990).

Cross-Plaintiffs argue that because the MSC explicitly contemplated the use of a vessel and Defendant's employee was directly involved in the PROSPECTOR's offloading operation, it must be deemed a maritime contract. For this argument, Cross-Plaintiffs cite a plethora of cases from the Fifth Circuit. These cases all found maritime contracts where the contract at issue involved providing services on a jack-up drilling rig, vessel, or other mobile drilling unit, or where the work under the contract was necessary for a vessel to accomplish its mission. *See Demette*, 280 F.3d at 500 (holding that a contract to provide offshore casing services on a jack-up drilling rig is a maritime contract); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1123-24 (5th Cir. 1992) (finding a maritime contract when the injured plaintiff was "part of a crew contracted to travel upon and enable a jack-up drilling rig to perform the purpose for which it was designed); *Dupont v. Sandefer*

*Oil & Gas, Inc.*, 963 F.2d 60, 62 (5th Cir. 1992) (holding that a contract to supply a vessel and use it for drilling and workover services is maritime); *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 460 (5th Cir. 1992) (holding that a contract to "work-over a jack-up rig" is a maritime contract); *Davis*, 919 F.2d at 317 (holding that an agreement to provide labor on a barge being used as a mobile work platform is a maritime contract); *Lockerman v. Global Santa Fe Drilling Co.*, 213 F. Supp. 2d 778, 781 (S.D. Tex. 2002) ("In light of the undisputed evidence indicated that Rigblast was providing services and equipment aboard *mobile offshore drilling units* pursuant to the MSA, Fifth Circuit precedent virtually compels the conclusion that the MSA is maritime in nature.") (emphasis added); *Diamond Offshore Co. v. A & B Builders, Inc.*, 75 F. Supp. 2d 676, 680 (S.D. Tex. 1999) (finding that a semi-submersible drilling rig qualified for vessel status which made the contract for repair of that rig "vessel repair" and a maritime contract). These cases are distinguishable from the case at bar. At the time of Shaw's accident, Defendant's employees were working on a fixed platform, not a vessel or jack-up drilling rig. Fixed platforms are considered artificial islands and do not qualify for vessel status. *See Herb's Welding v. Gray*, 470 U.S. 414, 416 n.2, 105 S. Ct. 1421, 1424 n.2, 84 L. Ed. 2d 406 (1985) (distinguishing between fixed and floating oil rigs); *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S. Ct. 1835, 23 L. Ed. 2d 360 (1969) (treating fixed platforms as artificial islands). When the accident occurred, Defendant's crane operator was in the process of getting the crane warmed up to offload a grocery box from the PROSPECTOR, and had not actually unloaded the grocery box from the PROSPECTOR. Cross-Plaintiffs offer no authority covering this situation.

Defendant cites several cases supporting the proposition that the act of offloading a grocery box is not enough to transform a contract for the performance of services on a fixed platform into a maritime contract. *See Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1528 (5th Cir. 1996) (refusing to hold a contract for services on fixed platforms maritime because it involved ingress and egress

onto a vessel for the transportation of employees from platform to platform); *Hollier v. Union Texas Petroleum Corp.*, 972 F.2d 662, 665 (5th Cir. 1992) (holding that "the act of stepping from the crew boat to the platform" is not a "separable maritime obligation in a contract to perform services on a platform"). In *Hodgen*, the Fifth Circuit held that travel over navigable waters is not enough to transform a contract concerning the exploitation of resources on the Outer Continental Shelf into a maritime contract because "few if any contracts" would be non-maritime since the "location of these resources involves significant travel over water." *Hodgen*, 87 F.3d at 1528. Further, the fact that the contract required OCS to indemnify the Forest Group for unseaworthiness claims is not enough to transform the contract into a maritime contract without additional maritime activity or a stronger maritime connection pursuant to the specific work order at issue.

  The evidence presented by both Cross-Plaintiffs and Defendant demonstrates that the only need for a vessel for Defendant to perform its services was to transport its employees to the platform and to get supplies such as food. No evidence demonstrates that vessels were required to actually perform Defendant's oil and gas services on the platform pursuant to the MSC and work order in effect at that time. At present, neither party has provided the Court with more specific information on the nature of the work order. If the act of offloading a grocery box can transform this contract into a maritime contract, then all contracts in the Gulf of Mexico are maritime contracts, and there is little if any point to the two-step test articulated in *Davis*. *See Hodgen*, 87 F.3d at 1528. Defendant was not hired to offload vessels; it was hired to operate a stationary platform. The summary judgment evidence does not demonstrate that Shaw's injuries resulted out of Defendant's maritime obligations. *See Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir. 1988). A review of the relevant historical jurisprudence indicates that the contract at issue does not fit into any historically maritime contracts.

B. Analysis Under the *Davis* Factors

Analysis under the *Davis* factors indicates that there are still genuine issues of material fact that prevent resolution of the indemnity issue on summary judgment. First, the work order in effect at the time of the injury has not been submitted by any of the parties. Instead, all parties claim that the work order has not been located. OCS suggests that it may have been verbal, and Cross-Plaintiffs ask the Court to speculate that it probably involved the use of vessels. Second, the facts are ambiguous as to what work the crew assigned to Platform 552 actually was engaged in. The summary judgment evidence indicated that at the time of the accident, OCS personnel were working on a fixed platform, that OCS is an "oilfield services company that provides outsourced personnel, along with operational and maintenance and support services, to oil and gas producers in the Gulf of Mexico," and that at the time of the accident, Defendant's employee, James Fowler, was operating the crane located on the platform in anticipation of offloading a grocery box and other supplies. The summary judgment evidence does not provide any additional information on the nature of the work order. Third, the OCS employees were not assigned to work aboard a vessel in navigable waters, rather, they were working on a fixed platform. Fourth, there is no evidence that any OCS employees were working to assist with the mission of any vessel as part of their work order. The Fifth and Sixth factors do not apply in this case because Plaintiff was not employed by the contractor performing the work. *See Dominque v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 395 (5th Cir. 1991).

The MSC is a blanket agreement, drafted to cover all circumstances that might arise. It is foreseeable that some of the work orders under the contract could be maritime in nature, and others could not. Cross-Plaintiffs ask this Court to speculate as to the nature of the work order to support its contention that the MSC is a maritime contract, arguing that it is "extremely likely" that OCS's performance for Forest Oil regularly involved jack-up drilling rigs and vessels, and that OCS was "likely" involved on a regular basis in vessel off-loading operations. This may be so, but Cross-

Plaintiffs have not provided evidence supporting these speculations. The Court will not engage in speculation to erase a genuine issue of material fact. What is certain and undisputed is that at the time of the accident, OCS was operating on a fixed platform in the Gulf of Mexico. Beyond that, it appears that little is known about the nature of the work being performed. It could be maritime or non-maritime. As a result, it is clear that disputed facts remain, specifically, the details of the work order that OCS was operating under at the time of the accident. The facts at present indicate that the contract between OCS and Forest Oil was non-maritime in nature. However, without additional evidence on the nature of the work order, be it written or verbal, this Court is reluctant to hold that the MSC is a non-maritime contract as a matter of law.

### IV. The Additional-Assured Provision

Cross-Plaintiffs also allege that they are entitled to protection as additional assureds under OCS's liability policy, which is valid under maritime law. Under Paragraph 3.1 of the MSC, OCS agreed to provide insurance for the Forest Group as an additional assured under its insurance policies. As with the indemnity provision, the validity of the additional-assured provision rests on the maritime or non-maritime nature of the OCS. For the same reasons outlined above, there are still genuine issues of fact with respect to this issue, and as such, summary judgment on this provision of the contract is not appropriate at this time.

### V. Conclusion

Because Defendant OCS raised a genuine issue of material fact with respect to the maritime nature of the MSC at issue, summary judgment is not appropriate on the issue of Cross-Plaintiffs' right to indemnity and insurance from OCS. Therefore, Cross-Plaintiffs' Motion for Partial Summary Judgment is hereby respectfully **DENIED**. In addition, Defendant's Motion for Partial Summary Judgment is hereby respectfully **DENIED**. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED.**

**DONE** this 31st day of October 2005, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge